DECISION
This is an appeal of the Board of Regents' order upholding the Commissioner of Education's decision to order the General Treasurer of the State of Rhode Island to deduct $54,745.28 from the City of Warwick's operations aid for the month of September 1993. Jurisdiction is pursuant to G.L. 1956 § 16-5-30.
 FACTS AND TRAVEL
Tierney Gaspar ("Tierney"), now deceased, was a special education student in the City of Warwick. Tierney was a profoundly retarded, technology dependent, paraplegic child. In July of 1991, the Warwick School Department developed an individualized education program ("IEP") for Tierney. Tierney was placed at the Tavares Pediatric Center ("Tavares"). Tierney's mother, Terry Gaspar ("Ms. Gaspar"), was dissatisfied with Tierney's IEP because Tavares would not allow Tierney to attend classes if she was off the ventilator. Unhappy with the IEP, Ms. Gaspar filed a complaint requesting a due process hearing. When Warwick prevailed at the due process hearing and a subsequent administrative review, Ms. Gaspar appealed the matter to federal court under the Individuals with Disabilities Education Act (IDEA). 84 Stat. 175. Ms. Gaspar voluntarily dismissed the federal court appeal on August 12, 1992, so that the results of the reassessment could be discussed with the School Department during the 1992 IEP review process.
Under Section One, Part V, 5.1.2 of the Regulations of the Board of Regents Governing Special Education of Students with Disabilities, meetings must be held at least once a year by each school district to review a student's IEP "on or about the anniversary date" of the last IEP meeting. Although Tierney has her last IEP meeting in July of 1991, the Warwick School Department failed to arrange an annual IEP review meeting for Tierney during July of 1992. Moreover, Ms. Gaspar and Mr. Roman, the Department of Education's Special Compliance Officer, requested of the Warwick School Department that an IEP review meeting be arranged for Tierney during July of 1992. The requests were ignored. Given the absence of any action by the school department, Mr. Romano scheduled an IEP meeting for Tierney for August 14, 1992. No representative from the Warwick School Department attended the meeting despite the fact the counsel for the School Department had signed the stipulation of dismissal of Tierney's appeal in federal district court two days earlier. The Department of Education then initiated a compliance proceeding against the Warwick School Department for its failure to conduct an annual IEP review for Tierney.
At the initial compliance hearing, Mr. Romano was appointed special visitor and was authorized to take necessary action to develop a revised IEP for Tierney. On November 24, 1992, the Warwick School Department submitted a proposed service plan for Tierney to Special Visitor Romano. On November 30, 1992, Mr. Romano recommended to the hearing officer that the November 24, 1992 service plan be approved subject to certain modifications, including the provision of nursing services. At the final hearing in the compliance action, Mr. Romano testified that nursing services were necessary for Tierney in order to provide her with a safe environment in which to receive a free, appropriate public education.
On December 10, 1992, the Commissioner of Education agreed to accept Special Visitor Romano's recommendations. The Warwick School Department agreed to pay for some of Tierney's educational expenses at the Cranston Center; however, the School Department refused to pay for a full-time nurse assigned to Tierney while she was weaned from her ventilator.
On August 31, 1993, the Commissioner of Education ordered that $54,745.28 be deducted from the City of Warwick's operation aid for the month of September 1993, to pay for the full-time nursing services rendered to Tierney during the previous semester. Pursuant to the Commissioner's order, the General Treasurer withheld the funds from Warwick's operations aid. Warwick appealed to the Board of Regents, and on November 21, 1997, the Board of Regents issued its opinion denying Warwick's appeal. On December 22, 1997, Warwick filed a petition for Writ of Certiorari to the Rhode Island Supreme Court; the Court denied Warwick's petition.
 STANDARD OF REVIEW
This Court's review of a decision of the Commissioner of Education is controlled by G.L. § 42-35-15(g), which provides for review of a contested agency decision:
 "(g) The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court may affirm the decision of the agency or remand the case for further proceedings, or it may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional or statutory provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."
This section precludes a reviewing court from substituting its judgment for that of the agency in regard to the credibility of witnesses or the weight of evidence concerning questions of fact. Costa v. Registry of Motor Vehicles, 543 A.2d 1307, 1309 (R.I. 1988); Carmody v. R.I. Conflict of Interest Commission, 509 A.2d 453, 458 (R.I. 1986). Therefore, this Court's review is limited to determining whether substantial evidence exists to support the Commissioner's decision. Newport Shipyard v. Rhode Island Commission for Human Rights, 484 A.2d 893 (R.I. 1984). "Substantial evidence" is that which a reasonable mind might accept to support a conclusion. Id. at 897. (quoting Caswell v. George Sherman Sand Gravel Co., 120 R.I. 1981, 424 A.2d 646, 647 (1981)). This is true even in cases where the court, after reviewing the certified record and evidence, might be inclined to view the evidence differently than the agency. Berberian v. Dept. of Employment Security, 414 A.2d 480, 482 (R.I. 1980). This Court will "reverse factual conclusions of administrative agencies only when they are totally devoid of competent evidentiary support in the record." Milardo v. Coastal Resources Management Council, 434 A.2d 266, 272 (R.I. 1981). However, questions of law are not binding upon a reviewing court and may be freely reviewed to determine what the law is and its applicability to the facts. Carmody v. R.I. Conflicts of Interests Commission, 509 A.2d at 458. When more than one inference may be drawn from the record evidence, the Superior Court is precluded from substituting its judgment for that of the agency and must affirm the agency's decision unless the agency's findings in support of its decision are completely bereft of any competent evidentiary support. Rocha v. State Public Utilities Comm'n, 694 A.2d 722, 726 (R.I. 1997).
 THE COMMISSIONER HAD THE AUTHORITY TO ORDER THE DEDUCTION OF FUNDS
The issue to be determined is whether the Commissioner of Education had the authority to order the deduction of funds from the City of Warwick's operation aid.
Section 16-5-30 of the Rhode Island General Laws authorizes the Commissioner of Education to withhold funds of a municipality if there is a "violation or neglect of law or . . . violation or neglect of rules and regulations" by the municipality. Under Section One, Part V, 5.1.2 of the Regulations of the Board of Regent Governing Special Education of Students with Disabilities, meetings must be held by each school district to review a student's IEP "At least once a year on or about the anniversary date of the last individualized education program (IEP) meeting."
The City of Warwick violated the above regulation by failing to arrange a timely IEP meeting for Tierney. Tierney had an IEP in July of 1991. However, despite requests from Ms. Gaspar and Mr. Romano, the Warwick School Department failed to arrange an IEP review meeting for Tierney during July of 1992. when Mr. Romano scheduled an IEP meeting for August 14, 1992, no representative from the Warwick School Department attended the meeting. Shortly after, the Department of Education initiated a compliance proceeding against the Warwick School Department for its failure to conduct an annual IEP review for Tierney. Thus, it was the School Department's failure to conduct an annual IEP review for Tierney in 1992 that constituted the "violation or neglect of law or . . . violation or neglect of rules and regulations" that warranted the withholding of funds by the Commissioner of Education under G.L. 1956 § 16-5-30.
 THE FULL-TIME NURSING SERVICES WERE RELATED SERVICES UNDER THE IDEA
The other issue to be determined is whether the full-time nursing services rendered to Tierney while she was weaned off her ventilator were "related services" under the Individual with Disabilities Act ("IDEA").
Congress enacted the IDEA "to assure that all children with disabilities have available to them . . . a free appropriate public education which emphasizes special education and related services designed to meet their unique needs." 20 U.S.C. § 1400(c). If the care required by a parent of a disabled child is a "related service" under the IDEA, then the school district must provide that serve free of charge.
The definition of "related services"[1] includes supportive services that "may be required to assist a child with a disability to benefit from special education." 20 U.S.C. § 1401(a)(17). Furthermore, the "related services" definition includes "medical services," provided that the medical services are for "diagnostic and evaluation purposes only."20 U.S.C. § 1401 (a)(17). thus, if medical services are not for diagnostic and evaluative purposes, the medical services are excluded from the definition of "related services." The U.S. Supreme Court has adopted a bright-line test to determine whether the medical services exclusion applies. Cedar Rapids Community Sch. Dist. v. Garret F., 119 S.Ct. 992, 997 (1999). Under the bright-line test, "the services of a physician (other than for diagnostic and evaluative purposes only) are subject to the medical services exclusion, but services that can be provided in the school setting by a nurse or qualified layperson are not." Id.
There is a two-step analysis to determine if requested services fall within the "related services" definition of 20 U.S.C. § 1401
(a)(17). Id. at 996-997. The first step is to determine whether the requested services are "supportive services;" the second step is to determine whether the requested services are excluded as "medical services." Id. at 996. Therefore, it must be determined whether the full-time nursing services administered to Tierney were "supported services," and if they were, whether the nursing services administered to Tierney were "supportive services," and if they were, whether the nursing services are subject to the medical services exclusion.
The record demonstrates that the full-time nursing services administered to Tierney were required to maintain her health and safety while she received a public education. Accordingly, the services were "supportive services."
Moreover, the nursing services are not subject to the "medical services" exclusion. Under the bright-line test, the services of a physician are subject to the medical services exclusion, but the services of a nurse in a school setting are not issued in this case are nursing services provided to Tierney while she was at school; under the bright-line test, the nursing services provided to Tierney cannot be excluded as a medical service.
Because the nursing services were "supportive services" and are not subject to the medical services exclusion, the nursing services fall within the "related services" definition of 20 U.S.C. § 1404
(a)(17), and the City of Warwick is required to pay for the services. The decision of the Board of Regents is affirmed.
[1] "The term `related services' means tansportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, counseling services, including rehabilitation counseling, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education, and includes the early identification and assessment of disabling conditions in children." 20 U.S.C. § 1401(a)(17).